Gail S. HUECKER et al., Defendants-Appellants, Cross-Appellees,

v.

Elizabeth MILBURN et al.,

and

Marian Weisenberger et al., Plaintiffs-Appellees, Cross-Appellants.

Nos. 75–1471—75–1474.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 18, 1976.

Decided July 21, 1976.

Ann T. Hunsaker, Paul E. Tierney, Kentucky Dept. of Economic Security, Robert W. Riley, Frankfort, Ky., for defendants-appellants.

Kurt Berggren, Legal Aid Society, Louisville, Ky., for plaintiffs-appellees.

Before EDWARDS, CELEBREZZE and McCREE, Circuit Judges.

CELEBREZZE, Circuit Judge.

Appellants, administrators of the Kentucky welfare program, appeal from the

award of attorneys' fees in two cases from the Western District of Kentucky [1] which are consolidated on appeal. In *Milburn v. Huecker*, 500 F.2d 1279 (6th Cir. 1974), we affirmed the District Courts' grant of prospective relief and denial of retroactive payment of welfare benefits.[2] However, we reversed the Courts' denial of costs and attorneys' fees and remanded the cases for reconsideration of those requests and for sufficient findings of fact to permit meaningful appellate review. *Id.* at 1282. On remand the District Judges abandoned their previous positions and awarded costs to Appellees and attorneys' fees to the Legal Aid Society of Louisville which has represented Appellees before all courts.

◼ In *Milburn v. Huecker*, Nos. 75–1471, 1472, Judge Bratcher, in a brief memorandum opinion, awarded $2,500 in fees to the Legal Aid Society. However, we are without jurisdiction to review this award because no separate order was ever entered as required by Rule 58 of the Federal Rules of Civil Procedure. *United States v. Indrelunas*, 411 U.S. 216, 93 S.Ct. 1562, 36 L.Ed.2d 202 (1973); *Richland Trust Co. v.* *Federal Insurance Co.*, 480 F.2d 1212 (6th Cir. 1973). In *Weisenberger v. Huecker*, Nos. 75–1473, 1474, Judge Allen awarded Legal Aid $2,000 in fees to be paid by Appellants in their individual capacities.[3] It is this award which we have jurisdiction to review.

Two questions are presented on appeal: 1.) whether the award of attorneys' fees against state officials in their individual capacities is barred by the Eleventh Amendment, and 2.) whether the award of fees falls within an exception to the "American Rule" which generally forecloses the award of attorneys' fees to successful litigants.

◼ One of the primary purposes of the Eleventh Amendment is the protection of the states' fiscal integrity. *See Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). *See also Jordon v. Gilligan*, 500 F.2d 701, 705 (6th Cir. 1974). This amendment established a jurisdictional bar which prevents federal courts from imposing monetary judgments against the sovereign states. *See Edelman v. Jordan, supra,* 415 U.S. at 678.[4] Although there is con-

1. *Milburn v. Heucker*, Nos. 75–1471, 1472 (Bratcher, J.); *Weisenberger v. Huecker*, Nos. 75–1473, 1474 (Allen, J.). The two cases were brought as class actions by Appellees on behalf of themselves and all recipients of benefits under the Aid to Permanently and Totally Disabled program (APTD), and the Aid to Families for Dependent Children program (AFDC), welfare programs jointly carried out by the state and federal governments. Appellees claimed that the state was failing to process applications and award benefits within time limits set by federal law. They sought declaratory relief and an order enjoining Appellants from not acting on applications within the relevant time periods and from not paying benefits from the date of application. They also asked for an award of all benefits wrongfully withheld and an award of costs and reasonable attorneys' fees. The District Courts held that the state's practices in administering the programs violated federal law·and granted prospective relief. The Courts denied, however, the demands for retroactive payment of welfare benefits as barred by the Eleventh Amendment. They also refused requests for costs and attorneys' fees.

2. While the cases were on appeal the Supreme Court decided *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), which held that the Eleventh Amendment deprived federal courts of jurisdiction to award past due welfare benefits payable from a state's treasury and that a state's participation in a federal welfare program does not, without more, constitute an implied consent by the state to be sued in federal court.

3. As a factual basis for the award, Judge Allen adopted statements made by Kurt Berggren, General Counsel for the Legal Aid Society, in an affidavit submitted to the Court. The Court found that neither Appellant Weisenberger nor any member of the plaintiff class was required to pay any fees to the Legal Aid Society since the Society is prohibited from taking fees directly from its clients. It found that Legal Aid is funded by various sources, public and private, and that the Society is chronically underfunded. The Court accepted the Society's assertion that an estimated 40 hours was spent representing Appellees in the District Court and 15 hours on the appeal to this Court. The District Court also found that no taxable costs were incurred by Appellees.

4. The Eleventh Amendment is, of course, no bar to suits in equity seeking prospective relief against individual state officials in their official capacities under the fiction adopted by the Su-

trary authority, the prevailing view of this circuit is that the Eleventh Amendment bars the award of attorneys' fees against an unconsenting state or against state officials acting in their official capacities. *See Jordon v. Gilligan, supra* at 705. *See also Taylor v. Perini,* 503 F.2d 899, 901 (6th Cir. 1974), vacated on other grounds, 421 U.S. 982, 95 S.Ct. 1985, 44 L.Ed.2d 474 (1975).[5]

This Court has found no meaningful distinction between an award of attorneys' fees and an award of damages for purposes of the Eleventh Amendment, where the award is for "a past breach of legal duty" by state officials which "must be paid from public funds in the state treasury . . ." *Jordon v. Gilligan, supra* at 709–10, *quoting Edelman v. Jordan, supra,* 415 U.S. at 663, 668, 94 S.Ct. 1347. The import of *Edelman v. Jordan* is that the Eleventh Amendment bars any monetary recovery against state officials where it is clear that the award must be paid from public funds in the state treasury. *See id.* at 663, 664–65, 668, 94 S.Ct. 1347. *See also Incarcerated Men v.*

*Fair,* 507 F.2d 281, 287 (6th Cir. 1974). However, the Eleventh Amendment does not bar the recovery of attorneys' fees against state officials in their individual capacities because such awards are not levied against public funds but against the officials' personal finances.[6] *See Taylor v. Perini, supra* at 902. *Cf. Incarcerated Men v. Fair, supra* at 289. And, as the Supreme Court observed in *Scheuer v. Rhodes,* 416 U.S. 232, 238, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974), even "damages against individual defendants are a permissible remedy in some circumstances notwithstanding the fact that they hold public office." In short, federal courts retain the authority to impose attorneys' fees on individual state officials so long as the award is not directed against public funds in the state treasury.

■ Appellants were sued in both their official and individual capacities. Since the state has not waived its sovereign immunity in this case, attorneys' fees may not be charged against the state or against Appellants in their official capacities.[7] Judge

preme Court in *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), that suit is brought against the individual officials rather than the state itself. *See Edelman v. Jordan, supra,* 415 U.S. at 663–68, 94 S.Ct. 1347. As noted by Justice Rehnquist in *Edelman,* "the difference between the type of relief barred by the Eleventh Amendment and that permitted under *Ex Parte Young,* will not in many instances be that between day and night." 415 U.S. at 667, 94 S.Ct. at 1357.

5. This issue has split the circuits with the Sixth and Third Circuits aligned against the First, Second, Seventh and Ninth Circuits. *Compare, e. g., Jordon v. Gilligan, supra; Taylor v. Perini, supra;* and *Skehan v. Bd. of Trustees,* 501 F.2d 31, 42 & n. 7 (3d Cir. 1974), *vacated on other grounds,* 421 U.S. 983, 95 S.Ct. 1986, 44 L.Ed.2d 474 (1975), *with e. g., Souza v. Travisono,* 512 F.2d 1137 (1st Cir. 1975), *vacated on other grounds,* 423 U.S. 809, 96 S.Ct. 19, 46 L.Ed.2d 29 (1976); *Class v. Norton,* 505 F.2d 123 (2d Cir. 1974); *Bond v. Stanton,* 528 F.2d 688 (7th Cir. 1976), *cert. granted,,* —— U.S. ——, 96 S.Ct. 2224, 48 L.Ed.2d 829, 44 U.S. L.W. 3682 (1976); *Brandenburger v. Thompson,* 494 F.2d 885 (9th Cir. 1974). The Fifth Circuit has not yet reached a concensus on this issue. *Newman v. State of Alabama,* 522 F.2d 71 (5th Cir. 1975) *(en banc)* (D.C., 349 F.Supp. 278, *rev'd and remanded* for consideration of the fees issue); *Gates v. Collier,* 522 F.2d 81 (5th Cir. 1975) *(en banc)* (D.C., 371

F.Supp. 1368, *rev'd and remanded* for consideration of the fees issue.) The Supreme Court explicitly reserved this question in *Alyeska Pipeline Serv. Co. v. Wilderness Soc.,* 421 U.S. 240, at 269 n. 44, 95 S.Ct. 1612, 44 L.Ed.2d 141. However, it appears that the Supreme Court is about to resolve the conflict between the circuits when it decides *Bitzer v. Mathews,* 519 F.2d 559 (2d Cir. 1975), *cert. granted,* 423 U.S. 1031, 96 S.Ct. 561, 46 L.Ed.2d 404, 44 U.S.L.W. 3358 (1975), *argued* April 21, 1976, 44 U.S.L.W. 3606 (1976).

6. An award against a state officer in his official capacity is an award against the office rather than the man and is to be satisfied out of public funds. *See Incarcerated Men v. Fair, supra* at 287, 289. An award in an official's individual capacity is directed against his personal assets. *Id.* at 287.

7. We cannot accept Appellees' argument that the state has waived its sovereign immunity in this case. Waiver may only be found where it is clear from the circumstances that the state intends to surrender its sovereign immunity and expose itself to a monetary judgment in the federal court. *See Edelman v. Jordan, supra,* 415 U.S. at 673, 94 S.Ct. 1347. The Kentucky constitution clearly provides that only the General Assembly may direct in which manner and in what courts suit may be brought against the Commonwealth. Ky.Const. § 231.

Allen concluded that the Eleventh Amendment did not bar an award of attorneys' fees against Appellants as individuals. In making the ruling, he noted that there were no statutory or constitutional provisions which would mandate the state paying the award although he acknowledged that the state would probably reimburse Appellants for any award of fees. Appellants claim that the state cannot reimburse them because of statutory limitations on the payment of "expenses" for state officials. They contend that payment of an award of attorneys' fees will have to be made out of their personal funds. If that is true, then the Eleventh Amendment is no bar to an award of fees since no state funds would be expended. However, if Judge Allen's prediction is correct, we fail to see how the state's decision to voluntarily reimburse Appellants can transform a permissible award of fees against state officials in their individual capacities into a monetary award against the state barred by the Eleventh Amendment.[8] Since there has been no showing that payment of the award must inevitably come from public funds, the Eleventh Amendment does not bar the award of attorneys' fees against the individual Appellants.

To say that the Eleventh Amendment is no bar to the award of attorneys' fees against the individual state officials does not mean that fees are properly awardable. Before a federal court may exercise its equitable power to award attorneys' fees to successful litigants, the court must find that " 'overriding considerations indicate the need for such a recovery.' " *Hall v. Cole*, 412 U.S. 1, 5, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702 (1973), *quoting Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391–92, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). *See also Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967). The traditional "American Rule" is that attorneys' fees are not awardable to the winning party unless statutorily or contractually authorized. *See Taylor v. Perini, supra* at 904. *See generally* 6 J. Moore, Federal Practice ¶ 54.77[2] at 1703–16 (2d ed. 1972). However, certain exceptions to this general rule have been recognized. Thus, a court may award attorneys' fees to a successful party if his opponent has acted " 'in bad faith, vexatiously, wantonly, or for oppressive reasons.' "[9] *Hall v. Cole, supra* at 5, 93 S.Ct. at 1946, *quoting* 6 J. Moore, Federal Practice ¶ 54.77[2] at 1709 (2d ed. 1972). A court may also award attorneys' fees if the par-

Mere participation in a joint program with the federal government, by itself, is not sufficient to establish consent on the part of the state to suit in the federal court. *Edelman v. Jordan, supra* at 673, 94 S.Ct. 1347. Allowing a default judgment to be entered does not amount to waiver of the defense of sovereign immunity since the Eleventh Amendment bar is jurisdictional in nature and thus may be raised at any point in the litigation. *Id.* at 678, 94 S.Ct. 1347. Besides, this was not a case where the state failed to assert its immunity. Although Appellants did not respond directly to the complaint, they did motion to strike the claim for retroactive benefits as barred by the Eleventh Amendment. Since the District Court's grant of relief was based on statutory rather than constitutional grounds, we see no need to determine what effect, if any, the later enactment of the Fourteenth Amendment had on the scope of sovereign immunity under the Eleventh Amendment. *See id.* at 694 n. 2, 94 S.Ct. 1347. (Marshall, J., dissenting).

**8.** Any reimbursement by the state would be voluntary in the sense that it is not compelled by the federal court. It is doubtful that a state could insulate its officials from personal liability for damages or attorneys' fees simply by guaranteeing reimbursement. *See generally* Note, *Attorneys' Fees and the Eleventh Amendment*, 88 Harv.L.Rev. 1875, 1885 n. 64 (1975).

**9.** The "bad faith" which justifies the award of attorneys' fees may be demonstrated in the conduct which necessitated the action or in conduct occurring during the course of the action. *Hall v. Cole, supra*, 412 U.S. at 15, 93 S.Ct. 1943. Bad faith may be demonstrated by showing that a defendant's obstinacy in granting a plaintiff his clear legal rights necessitated resort to legal action with all the expense and delay entailed in litigation. *See Monroe v. Bd. of Com'rs*, 453 F.2d 259, 263 (6th Cir. 1972). *See also Fairley v. Patterson*, 493 F.2d 598, 605 (5th Cir. 1974). In this regard, the purpose of an award of attorneys' fees based on a defendant's bad faith is both punitive and to compensate a plaintiff for the added expense of having to vindicate clearly established rights in court.

ty's successful litigation confers "a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them."[10] *Mills v. Electric Auto-Lite Co.,* supra, 396 U.S. at 393–94, 90 S.Ct. at 626. *See also Hall v. Cole,* supra at 5, 93 S.Ct. 1943.

■ Judge Allen made certain findings which indicated that an award of attorneys' fees could be justified under the "bad faith" exception to the "American Rule."[11] But he qualified this conclusion by expressing "some doubt as to the applicability of the bad faith principle to the individual defendants. . . ." He placed primary reliance in the award of fees on the "private attorney general" theory which has since been repudiated by the Supreme Court in *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Since attorneys' fees may no longer be awarded to private attorneys general, the award must stand or fall on the alternative finding of bad faith. However, the Court's equivocation on the personal bad faith of Appellants casts that basis for upholding the award in doubt.[12] In light of the uncertainty surrounding the District Court's finding of bad faith and the Court's princi-

pal reliance on the now-discarded private attorney general theory in awarding attorneys' fees, we have no alternative but to vacate the award and remand the case to the District Court for additional findings of fact as to the equitable basis for awarding attorneys' fees against the individual state officials.

Reversed and remanded.

EDWARDS, Circuit Judge (concurring).

I join in the remand called for by the court's opinion, since the United States Supreme Court has clearly ruled out award of attorney's fees on the private attorney general theory in *Alyeska Pipeline Service Co. v. The Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). In the light of footnote 44, pages 269–70, 95 S.Ct. 1612 in *Alyeska Pipeline,* supra, I adhere to my dissent in *Taylor v. Perini,* 503 F.2d 899, 906 (6th Cir. 1974).

---

10. The "common benefit" exception is actually a cost-spreading device to spread litigation costs among all who benefit from litigation undertaken by only a few. *Incarcerated Men v. Fair,* supra at 284.

11. Judge Allen observed that suit was brought on June 22, 1972 to require Appellants to comply with time periods clearly established by federal statutes enacted in 1968. 42 U.S.C. §§ 1351–55 (1970); *Handbook of Public Assistance Administration,* Part IV, § 2200(b)(3), (5) (1968). He stated that the enactment of the statute indicated "a strong Congressional desire that welfare applicants' claims be processed in a prompt and timely manner, and that the usual measure of time required should be 30 days." He found that, despite the three years the statutes and regulations promulgated thereto had been in effect, a seventy day period had elapsed between the time of Appellee's application and her receipt of approval. He

ascribed much of the delay to Appellants' insistance that members of the plaintiff-class file paternity suits to qualify for assistance. Judge Allen commented on Appellants' failure to respond to the complaint and indicated that Appellants had allowed a default judgment to be entered against them. He also noted in passing that Appellants resisted interrogatories propounded by Appellee following default, although he admitted that this was not relevant to a finding of bad faith since it occurred after Appellee was entitled to a default judgment.

12. Given the rationale for the "bad faith" exception, *see* note 8 *supra,* and the fact that the award was made against Appellants in their individual capacities, the Court must find that an award of attorneys' fees is justified by Appellants' conduct either in the processing of applications and the award of benefits or in the defense of the law suit.