196 F.3d 627 (6th Cir. 1999)
 Rose Mary Green and Edniquech Grubbs, Co-personal Representatives of the Estate of Malice Wayne Green, deceased, Plaintiffs-Appellees, Jessie Green, et al., Claimants-Appellees, Ernest L. Jarrett, Attorney-Appellant,
v.
Larry Nevers, et al., Individually and in their capacity as City of Detroit Police Officers, Defendants.
 No. 98-1695
 UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT
 Argued and Submitted: September 17, 1999
Decided and Filed: November 19, 1999
 
 Appeal from the United States District Court for the Eastern District of Michigan at Detroit, No. 92-76881--Gerald E. Rosen, District Judge.[Copyrighted Material Omitted]
 Ernest L. Jarrett, Detroit, Michigan, for Appellant.
 Patrick J. Burkett, Sommers, Schwartz, Silver, & Schwartz, Southfield, MI, for Appellees.
 Joseph W. Phebus, PHEBUS & WINKELMANN, Urbana, Illinois, for Appellees Kim Nihiser, First Busey Trust and Investment Co.
 Judith A. McNair, Detroit, Michigan, for Appellees Edniquech Grubbs and Rose Mary Green.
 Kenneth N. Hylton, Hylton & Hylton, Detroit, Michigan, for Appellees Rose Mary Green and Lachita Miller, Shakieta Strawter.
 Before: RYAN , MOORE , and GIBSON,* Circuit Judges.
 OPINION
 KAREN NELSON MOORE, Circuit Judge.
 
 
 1
 This appeal arises out of the litigation concerning the beating death of Malice Green at the hands of several Detroit police officers on November 5, 1992. The Estate of Malice Green ("the Estate") brought wrongful death and 42 U.S.C. §1983 claims against the City of Detroit, resulting in a settlement of $5.25 million. The district court finalized the settlement in a consent judgment on July 18, 1994. One of the attorneys for the Estate, Ernest Jarrett, now appeals a subsequent order of the district court denying his motion for discovery concerning the validity of the contingency fee agreement between the Estate and the Estate's attorneys and denying Jarrett any share in the accrued interest on the escrowed settlement funds.
 
 
 2
 For the reasons discussed below, we AFFIRM both of the district court's rulings.
 
 
 3
 * In 1992, the Estate of Malice Green filed suit against the City of Detroit, alleging wrongful death and 42 U.S.C. §1983 violations in connection with the killing of Malice Green by several Detroit police officers. The City of Detroit settled with the plaintiffs for $5.25 million, and a consent judgment was entered by the district court on July 18, 1994, approving the settlement amount. See Green v. Nevers, 111 F.3d 1295, 1298-99 (6th Cir.), cert. denied sub nom. Jarrett v. Green, 118 S. Ct. 559 (1997). The exact distribution of the settlement was not determined at that time, however.
 
 
 4
 The district court held a hearing concerning the distribution of the settlement on October 21, 1994, and issued an order on November 7, 1994, ruling on various jurisdictional motions and invalidating the contingency fee agreement of one of the attorneys, Brunetta Brandy, which would have entitled her to $1.2 million. The agreement was invalidated because there was no indication that Brandy was representing the plaintiffs in their representationalrather than personal capacities or that they were acting jointly in retaining Brandy, as required by Michigan law. The district court also held Jarrett's fee-sharing arrangement with Brandy (under which he would be entitled to one-half of the $1.2 million) to be invalid, because at least one of the co-personal representatives (Edniquech Grubbs) did not consent to Jarrett's participation in the case, as required by Michigan law. Therefore, the court found that Brandy and Jarrett were entitled only to the quantum meruit value of their services. On July 31, 1995, the district court entered an "Opinion and Order Determining Amount of Fees to Be Paid to Attorneys Brandy, Jarrett and Dorsey, and Order Disbursing Remainder of Escrowed Settlement Funds." Green v. City of Detroit, No. 92-CV-76881, 1995 WL 871177 (E.D. Mich. July 31, 1995). This order granted all accrued interest on the settlement to the Estate of Malice Green. See id. at *7 n.9.
 
 
 5
 Attorneys Brandy and Jarrett appealed several aspects of the district court's July 31, 1995 order, including the district court's findings regarding the validity of the fee agreements and the amount of attorney fees to which they were entitled. See Green, 111 F.3d at 1299. This court consolidated the appeals and affirmed all of the district court's rulings. See id. at 1304. Specifically, with respect to the validity of the fee agreements, this court affirmed the district court's reasoning regarding the failure of the co-personal representatives to act jointly in retaining Brandy to represent the Estate; we also held that the district court had broad authority to reject the contingency fee agreement as excessive or unreasonable. See id. at 1302-03.
 
 
 6
 Following that appeal, the district court held another hearing on the distribution of the settlement funds and issued an order granting the plaintiffs-appellees' motion for distribution of the settlement proceeds and resolving other pending motions, from which Jarrett now appeals. This order denied Jarrett's motion for discovery on the validity of the fee agreements.[1] It also modified the district court's prior decision regarding the accrued interest on the settlement funds, ordering that the interest be paid to the individual family members of Malice Green (claimants-appellees in this action) as well as to the Estate; as before, however, none of the accrued interest was to be paid to the attorneys.
 
 II
 A. Timeliness of the Appeal
 
 7
 The plaintiffs-appellees question this court's jurisdiction, asserting that Jarrett did not file a timely notice of appeal. Jarrett filed a notice of appeal on Monday, June 8, 1998, which stated that he was appealing from the district court's orders issued May 6, 1998, and May 19, 1998. Arguing that Jarrett is actually appealing only from the district court order issued Wednesday, May 6, 1998, the Estate asserts that the notice of appeal was filed 33 days after the entry of the order and therefore exceeds the 30-day time limit prescribed by Federal Rule of Appellate Procedure 4(a)(1).
 
 
 8
 In fact, the order from which Jarrett appeals was originally issued on April 30, 1998, and entered on the civil docket on May 4, 1998; the May 6 order, which was entered on the civil docket on May 12, 1998, merely amends the order entered on May 4 by correcting a minor technical error. For purposes of Rule 4, then, the order entered on May 4 is the relevant one, and it is from that order that Jarrettis actually appealing. See Whittington v. Milby, 928 F.2d 188, 191 (6th Cir.) ("[T]he mere fact that a judgment previously entered has been reentered or revised in an immaterial way does not toll the time within which review must be sought. Only when the lower court changes matters of substance, or resolves a genuine ambiguity, in a judgment previously rendered [does the time for appeal begin anew]." (quoting Federal Trade Comm'n v. Minneapolis-Honeywell Regulator Co., 344 U.S. 206, 211-12 (1952) (internal quotation marks omitted)), cert. denied, 502 U.S. 883 (1991).
 
 
 9
 Because the district court did not comply with the "separate judgment rule" when it issued its decision, however, that judgment was not "entered" under the terms of Rule 4. See Fed. R. App. P. 4(a)(7) (stating that a judgment or order is entered for the purposes of that rule "when it is entered in compliance with Rules 58 and 79(a) of the Federal Rules of Civil Procedure"). According to Rule 58, every judgment must be set forth on a document that is separate and distinct from any opinion or memorandum; a docket entry is not sufficient. See Fed. R. Civ. P. 58; Cloyd v. Richardson, 510 F.2d 485, 486 (6th Cir. 1975). It is clear that this rule applies to the attorney fees order in this case, because Federal Rule of Civil Procedure 54 provides that the term "judgment," for purposes of Rule 58, "includes a decree and any order from which an appeal lies."[2] Fed. R. Civ. P. 54(a). Because the district court has issued only an order that included his reasoning regarding the distribution of funds and attorney fees, but no separate judgment, the time for appeal had not yet begun to run when Jarrett filed his notice of appeal. Cf. Huecker v. Milburn, 538 F.2d 1241, 1243 (6th Cir. 1976) (noting that an attorney fees order, issued in the form of "a brief memorandum opinion," did not meet the separate document requirement of Rule 58). As a result, Jarrett's appeal is timely, and this court has jurisdiction over it. See, e.g., Schaefer, 509 U.S. at 302-03; Reid v. White Motor Corp., 886 F.2d 1462 (6th Cir. 1989), cert. denied, 494 U.S. 1080 (1990)[3].
 
 B. Motion for Discovery
 
 10
 Attorney Jarrett argues that the district court erred in denying his motion for discovery on the issues of whether the co-personal representatives of Malice Green's estate acted jointly in retaining Brandy and whether plaintiff Edniquech Grubbs objected to Jarrett's participation in the case. He asserts that the district court ruled on those issues without giving notice that it intended to do so, and thereforethat he was denied due process by this ruling. Because the discovery sought was irrelevant to the underlying issue, and because the discovery request had become moot due to the district court's ruling on the underlying issue, the district court did not abuse its discretion in denying Jarrett's motion.
 
 
 11
 Rulings concerning the scope of discovery are generally reviewed for abuse of discretion. See Criss v. City of Kent, 867 F.2d 259, 261 (6th Cir. 1988). The district court does not abuse its discretion in denying discovery when the discovery requested would be irrelevant to the underlying issue to be decided. See, e.g., id. at 262 (holding that the district court did not abuse its discretion in refusing to allow discovery on the issue of a police officer's actual motives and beliefs, because actual motives and beliefs are irrelevant to the underlying probable cause inquiry). Here, the district court found that discovery concerning the contingency fee contracts would be irrelevant, because the dispute involved the construction of an unambiguous contract, for which parol evidence would not be admissible. See, e.g., Zurich Ins. Co. v. CCR & Co., 576 N.W.2d 392, 395 (Mich. Ct. App.), appeal dismissed, 572 N.W.2d 13 (Mich. 1997), and appeal denied, 583 N.W.2d 902 (Mich. 1998). Moreover, this court's holding that the district court had broad authority to review the fee agreements for their reasonableness, see Green, 111 F.3d at 1302-03, provides an additional reason why the desired discovery was irrelevant. Even if the co-personal representatives had acted jointly in retaining Brandy and had consented to Jarrett's participation, the district court would have had the authority to review and invalidate the fee agreements as excessive or unreasonable. Therefore, the district court did not abuse its discretion in this case by denying as irrelevant the appellant's motion for further discovery relating to the validity of the fee agreements.
 
 
 12
 Jarrett's discovery motion was also moot. "The test for mootness 'is whether the relief sought would, if granted, make a difference to the legal interests of the parties . ...'" McPherson v. Michigan High Sch. Athletic Ass'n, Inc., 119 F.3d 453, 458 (6th Cir. 1997) (en banc) (quoting Crane v. Indiana High Sch. Athletic Ass'n, 975 F.2d 1315, 1318 (7th Cir. 1992) (citation omitted)). In this case, the invalidity of the contingency fee agreements had already been determined by the district court and affirmed by this court on appeal. See Green, 111 F.3d at 1301-03. Because the district court could not, on remand, have taken any action inconsistent with the judgment of the appellate court, granting the appellant's discovery request could not have any legal consequences. Therefore, the discovery motion was moot, and the district court did not err in denying it.
 
 
 13
 Jarrett claims that he was denied due process by the district court's failure to give him notice that it intended to rule on a matter affecting his financial interests. The record indicates, however, that counsel were invited by the district court to submit information regarding their contingency fee agreements prior to the November 7, 1994 order. On September 6, 1994, for example, the district court issued an order setting a hearing on the distribution of settlement proceeds and directing that "any proposal for distribution of attorneys' fees" be submitted to the court on or before October 3, 1994. J.A. at 243-44. Jarrett was therefore aware that the district court intended to decide the issue of attorney fees at the October 21, 1994 hearing and had an opportunity to submit relevant information.
 
 C. Accrued Interest
 
 14
 Jarrett also argues that he is entitled to the interest that accrued on his portion of the settlement while it was in escrow pending distribution. Jarrett does not give a specific date from which to calculate the accrual of interest, but heappears to argue that he is entitled to all interest that has accrued on his portion since the consent judgment was entered. Jarrett argues that to deny him the interest on his fees would effect a taking of his personal property. However, Jarrett had no legitimate claim to the $250,000 in attorney fees that he was ultimately awarded until the order to that effect was entered on May 4, 1998. Therefore, he has no right to the interest that accrued before that date, and the district court did not effect a taking in denying it to him.
 
 
 15
 In order for the district court's allocation of the accrued interest on the settlement fund to effect a taking in violation of the Fifth Amendment to the U.S. Constitution, that interest must be Jarrett's private property. Cf. Phillips v. Washington Legal Found., 118 S. Ct. 1925, 1930 & n.4 (1998) (treating the question whether the interest on client funds in IOLTA accounts is "private property" as a preliminary question to whether the IOLTA program effects a taking). Previous decisions of this court, however, dictate the conclusion that the $250,000 attorney fee award was not Jarrett's property until the district court so ordered. First, the award was granted to Jarrett in the district court's exercise of its equitable power to supervise the collection of attorney fees, not as the result of a fee agreement; as discussed above, Jarrett's fee agreement had been held invalid by the district court, and that holding was affirmed by this court. See Green, 111 F.3d at 1301-03. Therefore, Jarrett could only lay claim to the $250,000 as of the date on which the district court issued its order. Since Jarrett had no claim to the principal before that date, logic dictates that he also had no claim to the interest. Cf. Cataldo v. Winjack Corp., 144 N.W.2d 816, 817 (Mich. Ct. App. 1966) (holding, in a case where the amount due to the plaintiff was not ascertained until judgment, the plaintiff had "no valid claim for interest as of right prior to judgment"). Second, in United States v. Hoglund, 178 F.3d 410 (6th Cir. 1999), this court noted that "a settlement sum does not belong jointly to the attorney and the client. The settlement or jury verdict for the plaintiff's claim belongs to the plaintiff alone." Id. at 414. This statement suggests that the plaintiffs, not the attorneys, had a claim to ownership of the settlement fund interest during the time it was held in escrow pending distribution.
 
 
 16
 Having determined that Jarrett had no claim of right to the accrued interest on his portion of the settlement, we must consider whether the district court's decision to deny him a portion of the accrued interest was an abuse of discretion. SeeKalyawongsa v. Moffett, 105 F.3d 283, 289 (6th Cir. 1997). A federal district court has "broad equity power" to fix attorney fees under contingency fee contracts. Green, 111 F.3d at 1302 (quoting Krause v. Rhodes, 640 F.2d 214, 218 (6th Cir.), cert. denied sub nom. Sindell, Lowe & Guidubaldi v. Attorney Gen., 454 U.S. 836 (1981)). Furthermore, under federal law, in the absence of explicit statutory direction on the issue, the award of prejudgment interest is likewise in the discretion of the court. See Bricklayers' Pension Trust Fund v. Taiariol, 671 F.2d 988, 990 (6th Cir. 1982). In light of the fact that this court has already upheld the reasonableness of the district judge's award of attorney fees, which included no accrued interest to the attorneys, we find no abuse of discretion.
 
 
 17
 If we view the fee arrangement as a contract claim governed by state law, see Kalyawongsa, 105 F.3d at 286-88, we reach the same result. See Giannetti Bros. Constr. Co. v. City of Pontiac, 438 N.W.2d 313 (Mich. Ct. App. 1989) (holding that prejudgment interest may not be granted on an attorney fee award). City of Detroit v. R.B.S., Inc., 386 N.W.2d 167 (Mich. Ct. App. 1986), cited by the appellant, is not on point. That case dealt with one party'sfailure to pay attorney fees to the other party on the date the fees became due. The Court of Appeals of Michigan emphasized in that case that the interest was "not judgment interest. ... [It was] not an award for interest which accrued during the ... proceeding," nor was the agreement concerning the payment of fees by the date specified a settlement or a consent judgment. Id. at 169. That case is therefore not relevant to the case at hand, which does involve interest that accrued during legal proceedings on fees arising out of a settlement. Therefore, Michigan state law, like federal law, does not dictate a finding that the district court's refusal to grant prejudgment interest on the attorney fees constituted an abuse of discretion.
 
 III
 
 18
 For the foregoing reasons, we AFFIRM the district court's order.
 
 
 
 Notes:
 
 
 *
 The Honorable John R. Gibson, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.
 
 
 [1]
 According to Jarrett, that motion had been pending since November9, 1994. On that date, Jarrett filed an emergency motion, in which he requested discovery regarding the involvement of two other attorneys in the case and "in order to further [develop] the record herein." J.A. at 430-33 (amended motion). It is presumably to that motion that Jarrett refers, although he did not specifically request discovery pertaining to the validity of his own fee agreement anywhere in that motion.
 
 
 [2]
 The question whether the district court has complied with the separate judgment rule is distinct from the question whether the May 4 order was a "final"-- and therefore appealable -- decision within the meaning of 28 U.S.C. §1291. SeeShalala v. Schaefer, 509 U.S. 292, 303 (1993); 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure §2785, at 25 (2d ed. 1995). This court has held that an order determining the amount of attorney fees to be disbursed is a final appealable decision; therefore, the May 4 order, fixing the exact amount of Jarrett's attorney fees, also qualifies as a final decision that is appealable under 28 U.S.C. §1291. See Morgan v. Union Metal Mfg., 757 F.2d 792, 795 (6th Cir. 1985); cf. Wright, Miller & Kane, supra, §2781, at 13 ("[T]he 1993 amendment to Rule 58 permits, but does not require, the court to delay the finality of judgment for appellate purposes until an attorney fee dispute is decided.").
 
 
 [3]
 According to the literal terms of Rule 4, Jarrett's appeal is arguably premature, rather than timely or late, due to the absence of a separate document. See, e.g., Michael Zachary, Rules 58 and 79(a) of the Federal Rules of Civil Procedure: Appellate Jurisdiction and the Separate Judgment and Docket Entry Requirements, 40 N.Y.L. Sch. L. Rev. 409, 426 (1996). Because the separate judgment rule should be interpreted to facilitate rather than hinder appeals, however, parties may waive its requirements in the case of "premature" appeals, in order to obtain appellate review. See Bankers Trust Co. v. Mallis, 435 U.S. 381, 384-88 (1978); Reid, 886 F.2d at 1468-69.